STRIPLING *v.* RUDY.

Opinion delivered July 9, 1923.

FACTORS—BURDEN OF SHOWING FACTOR'S DISHONESTY.—Where factors handling the sale of cantaloupes were by contract required to furnish statements of sales and to render account for net proceeds thereof, and did so, the burden was on the principals to show that the factors acted dishonestly or did not render a proper accounting.

Appeal from Nevada Chancery Court; *James D. Shaver*, Chancellor; affirmed.

STATEMENT OF FACTS.

Dan Pittman and J. M. Stripling, as agents and trustees for certain cantaloupe growers, brought this suit in the chancery court against L. H. Thomas and E. E. Rudy to recover the sum of $4,020.88, the balance due them from the proceeds of the sale of twenty-three cars of cantaloupes.

It appears from the record that L. H. Thomas made arrangements to handle the cantaloupes grown by the farmers of Nevada County, and was to receive a 5 per cent. commission for shipping and selling them. L. H. Thomas in turn made a contract with E. E. Rudy to sell the cantaloupes, and he was to receive a commission of 10 per cent. therefor, which was to be divided between them. Prior to this time Rudy had been handling cars of tomatoes and other produce for Thomas, and advancing him money with which to purchase the same.

During the shipping season the growers became dissatisfied with the way Thomas and Rudy were handling the cantaloupes, and Dan Pittman and J. M. Stripling

were appointed by them as trustees to adjust the differences between them and Thomas and Rudy. The cantaloupe growers were afraid that Rudy would not give them proper settlements on the shipments of cantaloupes. The shipments were handled in this way: Thomas bought the cantaloupes from the farmers, and they were delivered to him in sheds. Thomas would then bill out the cantaloupes to Rudy, and he would divert the shipments to the firms to which he had sold the cantaloupes. Rudy had been advancing money from time to time for picking, packing, and shed expenses generally. On August 3, 1921, Dan Pittman and J. M. Stripling, as trustees for the cantaloupe growers, and L. H. Thomas and E. E. Rudy entered into a written contract which is as follows:

"It is understood that funds deposited in the name of Pittman and Stripling, trustees, are to be held in escrow until final settlement is made for produce shipped by L. H. Thomas for account of various growers, handled by E. E. Rudy. At the time of final settlement, trustees will check said funds to parties to whom it belongs. It is also understood that shed expenses are included in said funds, said Thomas and Rudy to get up satisfactory statements of amount of same, which is to be submitted to trustees for approval, and paid out of said funds, and settlement made with growers for net proceeds. It is further agreed and understood that E. E. Rudy is to forward to First State Bank, Prescott, Arkansas, proceeds of all cars which he has handled for L. H. Thomas, and which have not been accounted for up to present. These to be handled in manner above set out for cars already handled."

Rudy deposited $1,220.31, the proceeds of five cars of cantaloupes, in the First State Bank, Prescott, Ark., under the contract. After hearing the testimony in the case, including the statement of Rudy as to the sale of the cantaloupes and the expenses incident thereto, the chancellor entered a decree in favor of the defendants.

The chancellor found that Thomas was agent of the growers, and, as such agent, employed Rudy to handle and sell cantaloupes on a commission of 10 per cent. of the net proceeds; that twenty-three cars were handled in this way, and, after deducting freight charges and commissions, they brought net to the growers $4,352.26. The court also found that during the shipping season Rudy had advanced to Thomas, as agent of the growers, the sum of $4,300; that it was agreed between Thomas and Rudy that the latter was to retain an amount equal to the money so advanced by him out of the proceeds of the sale of the cantaloupes, and that no part of said money so advanced by said Rudy to Thomas has ever been repaid him.

The chancery court further found that Dan Pittman and J. M. Stripling, acting as trustees for the cantaloupe growers, entered into the written agreement copied in our statement of facts; that, under the agreement, the money received from the sale of the cantaloupes by Rudy was to be deposited in the First State Bank, Prescott, Ark., and held in escrow until the return from all the cars of cantaloupes were received; that Rudy, on August 3, 1921, deposited in the bank the sum of $1,230.31; that he afterwards furnished to the trustees an account of sales and an itemized statement of the net proceeds of each car sold by Rudy, showing in detail all advances made by him, all credits to which he was entitled, and the balance due him.

The court further found that the net proceeds of all the cantaloupes shipped and handled amounted to less than the amount of money advanced by Rudy to Thomas, and that Rudy should be allowed to retain the net proceeds derived from the sale of the cantaloupes, including the sum of $1,230.31 deposited under the agreement in the First State Bank, Prescott, Ark.

A decree was entered in accordance with the finding of the court, and the court dismissed, for want of equity, the complaint of the plaintiffs and cross-com-

plaint of Rudy against Thomas, and the cross-complaint of Thomas against Rudy.

It was further decreed that Rudy be allowed to retain the net proceeds for the cantaloupes in his hands, including the $1,230.31 deposited in the First State Bank.

To reverse that decree the plaintiffs have duly prosecuted an appeal to this court.

*H. E. Rouse* and *A. I. Roland,* for appellants.

As to the advances made to Thomas by Rudy, the latter had the burden of proving that Thomas was the agent of the growers. He could not rely on his statement alone. He was put on notice of the limitations of Thomas' authority, and should have ascertained what that authority was. 105 Ark. 111; 94 Ark. 301; 92 Ark. 315; 81 Ark. 202; 101 Ark. 68; 85 Ark. 252. A person dealing with an agent is charged with notice that such agent would have no implied authority to borrow money for himself on the credit of his principal. 2 Corpus Juris, 657, and note 56.

*Steve Carrigan* and *Wofford & Arbuckle,* for appellee.

Where an agent is acting for his principal, he will, in the absence of notice to the contrary, be presumed to be a general agent, and the burden is on the principal to show the limitations on his authority. 112 Ark. 63. The fact of agency may be proved by circumstantial evidence. 93 Ark. 600. Acts of an agent within the scope of his apparent authority bind the principal. 49 Ark. 320; 87 Ark. 374. See also 93 Ark. 521; 96 Ark. 456; *Id.* 558; 21 R. C. L. 853; 78 Ark. 209.

HART, J., (after stating the facts). It is insisted by counsel for the plaintiffs that Thomas and Rudy were partners, and should be held accountable to the trustees of the cantaloupe growers in that capacity. Without deciding that question, we shall assume that they were partners for the purposes of this decision.

The real question is whether or not Thomas and Rudy accounted to the cantaloupe growers for the pro-

ceeds of the sale of the cantaloupes, after deducting all proper charges and commissions.

It will be noted that the cantaloupe growers became dissatisfied with the way Thomas and Rudy were handling the shipments of cantaloupes. This caused the growers to select Pittman and Stripling to represent them and to adjust the differences between them and Thomas and Rudy. The parties entered into the agreement, dated August 3, 1921, which is copied in our statement of facts. Under that agreement Thomas and Rudy were to furnish to the trustees statements showing the sales of the cars of cantaloupes, and render an account to them for the net proceeds. This was done by Rudy. He made a statement showing the proceeds of the sale of each car of cantaloupes. This statement includes the name of the person to whom the cantaloupes were shipped and the amount derived from the sale thereof.

The statement also includes freight charges, cartage charges, and the cost of crating the cantaloupes. No useful purpose could be served by setting out each itemized statement in detail. Some of them show that the cantaloupes were sold at a profit, and some of them show that they were sold at a loss. Rudy rendered an itemized account of all the shipments, as he was required to do under the contract of Aug. 3, 1921. The net result of his whole statement is that the cantaloupes sold for less than the freight charges, expenses of crating them, and commissions. The evidence for the plaintiffs does not show that Rudy acted dishonestly in handling and selling the cantaloupes. The burden of proof in this respect was upon the plaintiffs. *Carter* v. *Franklin County Rd. Imp. Dist.*, 152 Ark. 302.

The contract between the parties required Rudy and Thomas to make a detailed statement showing the proceeds of the sale of each car of cantaloupes and the expenses of sale. As we have already seen, Rudy made an itemized statement of the amount received from the sale

of each car of cantaloupes, the name and place of business of the person to whom they were sold, and the freight charges and the cost of crating them. If Rudy did not honestly or in good faith render a proper accounting, the plaintiffs should have shown that fact by legal evidence. This they could have done by requiring Rudy and Thomas to exhibit to them the bills of lading, which would have shown the freight charges. They could have shown whether or not Rudy and Thomas received the market price for the cantaloupes at the places where they were sold. Of course, this would have required some trouble and expense on the part of the growers, but this is the fault of the system adopted by them and is not a defect in the law. They had a right to adopt whatever agencies they chose to dispose of their cantaloupes, and, having made a contract with Rudy and Thomas for them to account for the net proceeds derived from the sale of the cantaloupes, they must abide the result of their own agreement, or show that their agents did not faithfully account to them. The law cannot protect the growers from the alleged dishonesty of their selling agents, unless they establish such dishonesty by evidence. There is no proof in the record that Rudy and Thomas have falsified the statement rendered by them of the net proceeds derived from the sale of the cantaloupes.

The plaintiffs, having failed to establish by evidence that the defendants did not properly account to them for the net proceeds derived from the sale of the cantaloupes, are not entitled to recover in this case, and the court properly dismissed their complaint for want of equity.

It follows that the decree must be affirmed.